

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8520 | **DATE** | 6/13/2003 |
| **CASE TITLE** | Diane Smith vs. Stephanie Dunn etc. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Defendants' motion for summary judgment is granted and their motion to strike is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | JUN 1 6 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 32 |
| | Copy to judge/magistrate judge. | | | |
| | WAH | 03 JUN 13 PM 5:01 | date mailed notice | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 01 C 8520 |
| ) | |
| STEPHANIE DUNN, individually and as ) | |
| Principal of Edmund Burke School; and ) | |
| CHICAGO SCHOOL REFORM BOARD OF ) | |
| TRUSTEES, ) | |
| ) | |
| Defendants. ) | |

DOCKETED
JUN 16 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Diane Smith brought this action under 42 U.S.C. § 1983 against defendants Stephanie Dunn and the Chicago School Reform Board of Trustees (Board) alleging violations of her rights of free speech and association pursuant to the First and Fourteenth Amendments to the United States Constitution. Defendants filed a motion seeking summary judgment pursuant to Federal Rule of Civil Procedure 56 and a motion to strike portions of plaintiff's affidavit. For the following reasons, defendants' motion for summary judgment is granted and their motion to strike is denied as moot.

## BACKGROUND

Plaintiff Smith was employed by the Board as a teacher at the Edmund Burke School in Chicago, at which defendant Dunn is the principal. In September 2000, she voluntarily became involved in the Professional Advisory Council (PPAC), a group of teachers that provides assistance to both the principal and the Local School Council (LSC) on matters of concern relating to curriculum and programs. At a LSC meeting in October 2000, plaintiff

expressed concerns about a perceived lack of textbooks and other materials in the local schools.

In December 2000, plaintiff decided to run for an elected position on the LSC as the representative of her school. LSC elections for school representatives are non-binding polls, meaning that the result does not become final until the Board approves the elected teacher. Plaintiff claims that she asked for information about running in the elections, but that defendants failed to provide her with the requested information. Plaintiff also claims that she asked to have the election monitored by the Community Relations Office in order to ensure fairness.

The defendants allegedly held the vote in January 2001, monitored by Bill Davis, from the Board's Officer of School and Community Relations. Dunn waited until after Board approval of the election in February 2001 before announcing that plaintiff had lost the election by one vote. Plaintiff contested the election results, arguing that defendants delayed in providing the results of the election, that they failed to provide plaintiff with sufficient information about running in the election, and that they failed to provide for a neutral monitor.

Plaintiff claims that defendants retaliated against her for expressing her beliefs about the lack of textbooks and the election irregularities, thereby violating her First Amendment right to free speech. She specifically alleges that defendants acted together to (1) stop her from speaking about the alleged lack of textbooks by turning out the lights at the meeting; (2) attempt to suspend her in December 2001, based on knowingly false accusations that plaintiff had failed to submit her grades electronically and to do so without union representation; (3)

falsely accuse her in March 2001 of striking a student; (4) suspend her in March 2001, based on false allegations that she had left children unsupervised; (5) issue a warning based on complaints they knew to be false; and (6) falsely claim that she had abused a student even though she was subsequently cleared by the Department of Children and Family Services (DCFS).

## DISCUSSION

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *see* Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986); Bennett v. Roberts, 295 F.3d 687, 694 (7th Cir. 2002). Our function is merely to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

We undertake a three-step analysis in evaluating a plaintiff's First Amendment retaliation claim under § 1983. Vukadanovich v. Board of School Trustees of North Newton School Corp., 278 F.3d 693, 699 (7th Cir. 2002). We must first determine whether plaintiff's speech was constitutionally protected. *Id.* Second, we determine whether defendants' retaliatory actions were motivated by her speech. *Id.* Third, we must establish whether the defendants would have taken the same steps in the absence of the speech. *Id.* If the plaintiff is able to establish the first two prongs of the test, the burden then shifts to the defendant to prove the third prong by a preponderance of evidence. *Id.* Finally, if the defendants meet this burden, the plaintiff has an opportunity to rebut by showing that the defendants' reasons were pretextual. *Id.*

To determine whether a public employee's speech deserves First Amendment protection, we apply a two-part test. Wainscott v. Henry, 315 F.3d 844, 848 (7th Cir. 2003). First, we must determine whether plaintiff engaged in the speech as a private citizen on a matter of public concern. Connick v. Myers, 461 U.S. 138, 147 (1983). We then balance the employee's interest in commenting against the employer's interest in efficient public services. Pickering v. Board of Educ., 391 U.S. 563, 568 (1968).

Plaintiff alleges that she made two statements for which defendants retaliated. The first was the report about the lack of textbooks and materials in the schools and the second was the complaint about the election procedure. She argues that because these issues affected the public schools they are clearly matters of public interest and therefore deserving of constitutional protection. The inquiry is not this simple however. We must look at the context of plaintiff's speech. Wainscott, 315 F.3d at 850. If the statements were made as part of Smith's job duties, she was not making the statements as a concerned citizen, but rather as an employee. Michael v. St. Joseph County, 259 F.3d 842, 846 (7th Cir. 2001).

"Speech which is made in all respects as part of the employee's job duties is generally not the protected expression of the public employee." Gonzalez v. City of Chicago, 239 F.3d 939, 942 (7th Cir. 2001). It is unclear whether or not plaintiff's speech is entitled to constitutional protection. While her position on the PPAC, her speech to the Board, and her attempt to become the school's LSC representative, were all made as part of her role as a teacher, they were not a mandatory part of her employment.

Even assuming plaintiff could demonstrate that her speech was constitutionally protected, she has no evidence that any of defendants' actions were improperly motivated by

retaliation for her speech. Plaintiff relies heavily on the timing of defendants' disciplinary measures – she had worked for the Board since 1974 and was never disciplined until she began planning to make the speech about the lack of textbooks. Suspicious timing alone does not constitute sufficient evidence that defendants were motivated by plaintiff's speech. *See* Pugh v. City of Attica, 259 F.3d 619, 628-29 (7th Cir. 2001) (holding that in a discrimination claim, timing is only "circumstantial, indirect, evidence").

I.      Textbooks Speech

Plaintiff alleges that defendant tried to prevent her from speaking about the perceived lack of textbooks by turning out the lights and prematurely ending the meeting. There is no evidence however that plaintiff's speech was disrupted in any way. The record shows that the lights at the meeting were turned off for a few minutes, but were quickly turned on, allowing plaintiff to complete her presentation and answer some questions from the audience. There is no evidence supporting plaintiff's allegation that someone (under the direction of defendants or otherwise) intentionally turned the lights off, or that anyone left the meeting during the time they were off. At worst, a few audience members were not able to ask specific questions before the meeting ended. There is nothing to indicate that defendants made any effort to stop plaintiff from speaking or that she was actually prevented from speaking in any meaningful way.

II.     Election Irregularities

Plaintiff next claims that defendants prevented her election as the LSC teacher representative from her school by failing to provide her with required materials and then by improperly conducting the election. Plaintiff never actually asked Dunn for the election

information, instead choosing to ask LSC member Betty Hamer and other Board employees. She presents no evidence that any of these Board members intentionally declined to give her the information or that her desire to run in the election was thwarted by defendants in any way – she was able to register for the election and lost by one vote.

The record also reveals no irregularities in the election procedure. While plaintiff argues that defendants failed to provide a neutral monitor for the election, she does not dispute that Bill Davis, from the Board's office of school and community relations, was present for at least 45 minutes to monitor the election. Likewise, there was nothing improper in Dunn's waiting until after Board approval before announcing the results because the election was non-binding and the Board had the final power to approve the elected candidate. Plaintiff does not explain how she was prejudiced in any way by the election procedures.

### III. Disciplinary Measures

The evidence shows that defendants had substantial justification for all of the disciplinary measures taken and that these measures were not motivated by plaintiff's speech.

#### A. Electronic Grade Submissions

Plaintiff contends that she was improperly disciplined for her failure to submit her grades in electronic form and was suspended without a fair hearing and without the opportunity to find union representation. The school announced in the spring of 2000 that it would begin requiring electronic grade submissions in the fall of that year and notified all of the teachers. Plaintiff admitted at her deposition that she was aware of the new policy, that she failed to properly submit her grades and subsequently notified Dunn that she would not do so electronically. Dunn then began pre-disciplinary procedures and informed plaintiff that

she had the right to union representation. Plaintiff declined to seek such representation because she was concerned about her standing within the union. After a hearing, Dunn suspended plaintiff for one day, for which she was paid. Nothing indicates that Dunn or any of the defendants were motivated by plaintiff's speech in deciding to discipline her or that she suffered any injury.

B. <u>Unsupervised Students</u>

Plaintiff's next contention is that she was suspended in March 2001, based on false allegations, as part of further retaliation. On December 8, 2000, Dunn issued a warning to plaintiff because she violated Board policy by leaving her students unsupervised on multiple occasions. On February 23, 2001, Dunn claims to have found plaintiff's students unsupervised and held a pre-discipline hearing on March 6, 2001, to discuss the alleged violation with the plaintiff, a union representative and the assistant principal. Pursuant to findings at the hearing, Dunn suspended plaintiff for two days. On April 4, 2001, this suspension was upheld by the Board's department of labor and employee relations after a full, *de novo* hearing. Again, the evidence shows that defendants were justified in disciplining plaintiff and nothing indicates that they were motivated by retaliation.

Plaintiff claims that another teacher, Barbara McDonald, told her she was frequently late in turning in electronic grades and was not disciplined. She also claims that a third teacher, Ms. Hopkins, was also late and never disciplined. Noticeably absent, however, is any affidavit from either of those teachers or from anyone else with personal knowledge of the facts. What we do have is hearsay, which, even if credited, is not enough.

In discrimination cases, when a plaintiff alleges that she was <u>disciplined</u> more harshly

than another employee, based on a prohibited reason, she must demonstrate that she was similarly situated with respect to performance, qualifications and conduct. Radue v. Kimberly-Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000). Again, plaintiff presents no evidence that she was similarly situated to any teachers who were supposedly treated differently.

### C. Allegations of Striking a Student

Plaintiff finally alleges that defendants falsely accused her of striking a student, disciplined her based on this allegation, and encouraged the student's family to file a complaint with the police. The student, E.R., testified that plaintiff injured her because she was talking during class. She then reported the incident to her mother, L.C., who decided to report the incident to the school. Dunn was required by law to report the incident to DCFS and did so, resulting in plaintiff's arrest and removal from the classroom. While DCFS chose not to prosecute the case criminally, Dunn initiated disciplinary action and, following a Board investigation, plaintiff was suspended for five days.

Plaintiff points to no evidence to suggest that defendants did anything improper in handling E.R.'s complaint of abuse. While she denies the charges made by the student and her mother, plaintiff does not present any evidence that defendants fabricated the charge or were influenced by her speech in handling the investigation, other than arguing that the charge must have been false because DCFS decided not to prosecute her criminally. In making their decision, DCFS workers were searching for evidence of a substantial risk of serious bodily harm to the student. The Board's rules, on the other hand, prohibit any form of corporal punishment.

### Motion to Strike

Defendants subsequently filed a motion to strike portions of defendants' affidavit in support of her response to defendants' statement of material facts. A party may not create an issue of fact by submitting an affidavit that contradicts prior deposition testimony. <u>Adusumilli v. City of Chicago</u>, 164 F.3d 353, 360 (7th Cir. 1998). Where an affidavit and testimony are in conflict, the affidavit is disregarded unless it can be shown that the deposition testimony was a mistake. *Id.* It does appear that there are a few inconsistencies between plaintiff's deposition and her subsequent affidavit. In deciding the summary judgment motion, however, we looked at both the affidavit and testimony to find undisputed facts that support the granting of the summary judgment motion. For that reason, we deny defendants' motion to strike as moot.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted and their motion to strike is denied as moot.

JAMES B. MORAN
Senior Judge, U. S. District Court

June 13, 2003.